UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| United States of America,<br><br>        Plaintiff,<br><br>vs.<br><br>Raymond Everett Holmberg, a/k/a Raymon Holmberg, a/k/a Ray Holmberg, a/k/a Sean Evan, a/k/a Sean Evans,<br><br>        Defendant. | Case No. 3:23-cr-00206<br><br><br>**DEFENDANT'S RESPONE TO MOTION FOR REVIEW OF DEFENDANT'S EXCEPTIONAL CIRCUMSTANCE RELEASE POST-PLEA** |

### INTRODUCTION

At issue before the Court is whether serious health conditions—conditions unimproved since the Government agreed the conditions were exceptional reasons—empower this Court to allow Defendant to remain on release pending sentencing. On August 8, 2024, the parties appeared before the Court for a change of plea hearing. During the hearing, this Court received, and accepted, a guilty plea from Defendant Raymond Everett Holmberg ("Mr. Holmberg") to one count of Travel with Intent to Engage in Illicit Sexual Activity. At the conclusion of the hearing, the Court considered a Release Status Report to the Court filed by the United States Pretrial Services.[1] Despite his disputes with the allegations made therein, Mr. Holmberg did not challenge the report because of the stipulation reached between the parties. Specifically, as attested to by Assistant United States Attorney Jennifer Puhl at the change of plea hearing, the minor violations alleged did not rise to the grounds to seek the

---

[1] *See generally* ECF No. 32.

revocation of release. The Government also stipulated that Mr. Holmberg's ongoing health issues and treatment created "exceptional reasons" for him to remain on release pending sentencing. This Court accepted the stipulation, ordering that Mr. Holmberg would remain on release pending sentencing.

Then, on October 10, 2024, the United States Pretrial Services filed a second Release Status Report to the Court.[2] The officer alleged Mr. Holmberg had "accessed social media platforms, including Facebook and Twitter, on seven occasions from August 13, 2024, to August 17, 2024, and one occasion on September 22, 2024, without prior permission from Pretrial Services."[3] Additionally, the officer alleged that, "on August 7, 2024, the defendant frequented a residence in Fargo, ND without prior approval from Pretrial Services . . . ."[4] The report did not provide any details on the alleged violations.[5] And despite the alleged violations, the officer did not seek to have Mr. Holmberg's leave revoked, instead advising that "Pretrial Services will notify the Court of any additional noncompliance."[6]

Despite any details on the alleged violation, and despite Pretrial Services not advocating for revocation, on October 15, 2024, the Government filed its Motion for Review of

---

[2] *See generally* ECF No. 36.

[3] *Id.* at 1.

[4] *Id.*

[5] *Id.*

[6] *Id.* at 2. Because Pretrial Services was not recommending revocation, the purpose of the second report is unclear because an interim report not seeking revocation is highly atypical. Instead, the report may have been filed simply because the authoring agent will be departing on maternity leave, and she wanted to provide a complete report to the Court prior to such leave.

Defendant's Exceptional Circumstances Release Post-Plea.[7]  Therein, the Government "move[d] this Court for a hearing regarding [Mr. Holmberg's] violations of his post-plea release conditions, pursuant to 18 U.S.C. 3148(b)."[8]  Specifically, the Government sought "that the Court hold a hearing on the alleged violations at which time [the Government] would also request that the Court revisit [Mr. Holmberg's] circumstances for the purposes of determining whether they are still 'exceptional' such that he may remain on continued release pending sentencing."[9]

In the interim, the United States Pretrial Services has provided details of the alleged violations.  Specifically, Pretrial Services alleges Mr. Holmberg used Facebook to look at innocuous pictures from immediate family members, and that he used Twitter to monitor commentary surrounding his case and the change of plea hearing.[10]  Such violations are unlikely to be repeated as Mr. Holmberg—with Pretrial Service's assistance—has closed his Facebook account, and he has terminated the news alert for articles about his case.[11]

At a status conference on October 17, 2024, this Court asked the parties to brief the issue of whether Mr. Holmberg's medical conditions and treatment provided a basis for his continued release pending sentencing.  As outlined herein, under the applicable statutes, and precedent, Mr. Holmberg's medical conditions and treatment are "exceptional reasons" for

---

[7]  *See generally* ECF No. 37.

[8]  *Id.* at 1.

[9]  *Id.* at 9.

[10]  Ex. A.

[11]  *Id.*

3

him to remain on release pending sentencing. Mr. Holmberg respectfully requests that this Court continue his release.

LAW AND ARGUMENT

**I.	The statutory framework provided by the Bail Reform Act of 1984 and the 1990 Crime Bill allow a court to release a defendant, pending sentencing, for "exceptional reasons."**

The Bail Reform Act of 1984,[12] as modified by the 1990 Crime Bill,[13] controls a defendant's eligibility for release pending sentencing or appeal. Under Section 3143(a)(2), a court must detain a person found guilty of certain offenses pending sentencing.[14] In such cases, a court may order a defendant's release pending sentencing if (1) "the judicial officer finds there is a substantial likelihood that a motion for acquittal or new trial will be granted" or "an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person;" and (2) "the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community."[15]

In this case, Mr. Holmberg is subject to presumptive post-plea detention because he has pleaded guilty to Travel with Intent to Engage in Illicit Sexual Activity—a qualifying offense.[16] Mr. Holmberg's Plea Agreement that contains a waiver of his right to appeal, ensuring no substantial likelihood that Mr. Holmberg will be granted an acquittal or a new

---

[12]  Pub. L. No. 98-473, Title II, § 203(a), 98 Stat. 1976 (codified at 18 U.S.C. §§ 3141-3156 (1984)).

[13]  *See* Crime Control Act of 1990, Pub. L. No. 101-647, § 902, 104 Stat. § 4826, 4827 (1990).

[14]  *See* 18 U.S.C. § 3143(a)(2).

[15]  18 U.S.C. § 3143(a)(2)(A) & (B).

[16]  *Compare* 18 U.S.C. § 3142(f)(1)(A), *with* 18 U.S.C. § 2423(b).

trial.[17]   It is also undisputed that the Government will be requesting a sentence of imprisonment.[18]   Therefore, this Court is generally required to detain Mr. Holmberg under Section 3143(a)(2).

But this general rule is not absolute.  A defendant subject to mandatory detention under Section 3143(a)(2) may still be released, pending sentencing, if (1) "exceptional reasons" clearly show "detention would not be appropriate"; and (2) the defendant meets the conditions of release set forth in Section 3143(a)(1).[19]   Here, Mr. Holmberg meets the conditions for release set forth in Section 3143(a)(1): his performance on release shows that he is unlikely to flee or pose a danger to the safety of any other person or the community if he remains on release.  Additionally, as outlined below, Mr. Holmberg's continued release, pending sentencing, is appropriate under the "exceptional reasons" exception.

## II.   Section 3145 authorizes this Court to release Mr. Holmberg for "exceptional reasons."

As a threshold matter, some courts have questioned a district court's authority to release a defendant subject to mandatory detention.  The First, Second, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth Circuit Courts of Appeal have all indicated that district courts may release a person for "exceptional reasons" subject to § 3145(c).  Most have done so with perfunctory analysis.[20]   Several circuits—including the Eighth Circuit—merely accept,

---

[17]   *See* ECF No. 28, at ¶ 22.

[18]   *Cf. id.* at ¶ 18(a) ("At sentencing, the United States will . . . [r]ecommend a sentence at the low end of the applicable Guideline range[.]").

[19]   18 U.S.C. 3145(c).

[20]   *See United States v. Christman*, 596 F.3d 870 (6th Cir.2010); *United States v. Garcia*, 340 F.3d 1013, 1014 n. 1 (9th Cir.2003); *United States v. Jones*, 979 F.2d 804 (10th Cir.1992);

without further discussion, a district court's use of Section 3145(c)'s "exceptional reasons" analysis.[21] To the extent this Court were to question its authority to release Mr. Holmberg for "exceptional reasons," a proper reading of Section 3145 should assuage such concerns.

The first step in any statutory analysis is analysis of the applicable statutory language to "determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case."[22] If the statutory language is unambiguous on its face, then a court's inquiry is at an end.[23] In looking at the plain language of a statute, "[s]tatutory definitions control the meaning of statutory words."[24] Statutory definitions "exclude[] any meaning that is not stated."[25]

The Bail Reform Act defines "judicial officer" as "unless otherwise indicated, any person or court authorized . . . to detain or release a person before trial or sentencing or pending appeal in a court of the United States . . . ."[26] Additionally, Section 3141(b) provides:

> A judicial officer of a court of original jurisdiction over an offense, or a judicial officer of a Federal appellate court, shall order that, pending imposition or

---

*United States v. Herrera–Soto*, 961 F.2d 645 (7th Cir.1992); *see also United States v. Rodriguez*, 50 F.Supp.2d 717 (N.D. Ohio 1999); *United States v. Devinna*, 5 F.Supp.2d 872 (E.D.Cal.1998).

[21] *See United States v. Mostrom*, 11 F.3d 93 (8th Cir.1993); *United States v. Weiner*, No. 92–1708, 1992 WL 180697 (1st Cir.1992); *United States v. DiSomma*, 951 F.2d 494 (2d Cir.1991).

[22] *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997).

[23] *Id.*

[24] *Lawson v. Suwannee Fruit & S.S. Co.*, 336 U.S. 198, 201 (1949).

[25] *Colautti v. Franklin*, 439 U.S. 379, 392 n. 10 (1979) (citation omitted).

[26] 18 U.S.C. § 3156(a)(1).

6

execution of sentence, or pending appeal of conviction or sentence, a person be released or detained under this chapter.[27]

With these statutory definitions ascertained, the plain meaning of the final sentence of § 3145(c) authorizes district courts and appellate courts to grant release upon a finding of exceptional reasons making detention inappropriate. There is nothing illogical about the placement of this authority in a subsection entitled "appeal from a release or detention order." On the contrary, the placement simply reflects the practical necessity of permitting district courts to undertake the threshold analysis of exceptional reasons. If district courts lacked the authority to conduct the threshold analysis referenced above, every defendant in mandatory detention circumstance would be detained and the efficacy of § 3145(c) would be subject to the vagaries of a court of appeals docket.[28]

And even if this Court found the language of Section 3145(c) to be ambiguous, the legislative history of the Bail Reform Act supports this Court's authority to determine exceptional reasons.[29] "Prior to passage of the current version of § 3143 and § 3145, the Bail Reform Act afforded substantial discretion in the district court regarding detention of

---

[27]  18 U.S.C. § 3141(b).

[28]  *See United States v. DiMattina*, 885 F.Supp.2d 572, 585, No. 11–705, 2012 WL 3260216, at *13 (E.D.N.Y. Aug. 8, 2012) ("If a district court is without power to grant release of a defendant who would otherwise be eligible for such relief, federal law mandates incarceration until a court of appeals decides to release him. Yet section 3145(c) presumes that incarceration of such defendants pending appeal would be unjust."); *United States v. Goforth*, 546 F.3d 712, 716 (4th Cir. 2008) ("It would be surprising for Congress to create an exception to mandatory detention predicated on exceptional reasons, only to force a defendant to seek a ruling from the circuit court that such circumstances exist.").

[29]  *Cf. United States v. R.L.C.*, 503 U.S. 291, 298 (1992) (plurality opinion) (when statutory language is ambiguous, the court may examine legislative history to determine Congressional intent, i.e., the intended meaning of the statute).

defendants who were convicted but awaiting sentencing or appeal."[30]  In 1989, Senator Paul Simon introduced legislation entitled "Mandatory Detention for Offenders Convicted of Serious Crimes Act."[31]  This legislation sought to mandate detention for drug traffickers and violent offenders.  It also proposed the "exceptional reasons" language into the Bail Reform Act.  This legislation was incorporated into the 1990 Crime Bill and was enacted on November 29, 1990.[32]  Thus, the final sentence of Section 3145(c) was added at the same time as the mandatory detention provisions set forth in Sections 3143(a)(2) and (b)(2).  In light of this legislative timing, the "exceptional reasons" provision was in all likelihood "designed to provide an avenue for exceptional discretionary relief" from those mandatory detention provisions.[33]  Indeed, an earlier version of the "exceptional reasons" provision in Section 3145(c) stated that it could be applied by a "court of appeals or a judge thereof."[34]  But the language of the final version changed the language to "judicial officer."  If Congress had intended to limit the "exceptional reasons" provision to circuit judges, there would have been no reason to modify the original language.  This strongly suggests that Congress intended to vest both district courts and appellate courts with discretionary authority to release convicted defendants under § 3145(c).  Moreover, the problem of mootness supports this interpretation of Section 3145(c) in that, but for district court authority to determine exceptional reasons in

---

[30]  *United States v. Green*, 250 F.Supp.2d 1145, 1147 (E.D.Mo.2003).

[31]  *Id.*

[32]  *See* Crime Control Act of 1990, Pub. L. No. 101–647, § 902, 104 Stat. 4826, 4827 (1990).

[33]  *United States v. Carr*, 947 F.2d 1239, 1240 (5th Cir. 1991).

[34]  136 Cong. Rec. S6,491 (daily ed. May 17, 1990) (Section 1152—Mandatory Detention).

8

the first instance, it is entirely possible that, in the case of shorter sentences, a convicted individual's appeal based on "exceptional reasons" could become moot before an appeals court has the opportunity to rule on it.[35] For these reasons, this Court possesses the discretion to release Mr. Holmberg pending sentencing for "exceptional reasons" under 18 U.S.C. § 3145(c). All that remains is for the Court to determine whether Mr. Holmberg qualifies for release under § 3145(c).

**III. This Court must determine for itself the legal question of the existence of exceptional reasons for Mr. Holmberg's continued release pending sentencing, while bound by the parties' factual stipulations.**

The parties stipulated that Mr. Holmberg's medical conditions establish "exceptional reasons" for continued release. Specifically, June 18, 2024, counsel for Mr. Holmberg wrote the following to Assistant United States Attorney Jennifer Puhl:

> To follow up on our call, Mr. Holmberg has a number of upcoming medical appointments. This week h[e] is meeting with a pulmonologist and his primary provider. In late July, he has a scheduled appointment with his cardiologist to further assess an existing heart valve stenosis. Last December, he underwent surgery for spinal stenosis. He has periodic follow up appointments for that as well. US Pretrial Services is aware of and has approved his medical appointments. Most concerning to me is to make sure his heart condition is fully assessed and addressed in July.
>
> Will you stipulate and join a request for the court to find extraordinary circumstances warrant continuation of Mr. Holmberg's pretrial release conditions following his plea and prior to sentencing (instead of remand to the Marshals pending sentencing)?[36]

---

[35] *See Goforth*, 546 F.3d at 716.

[36] Ex. B.

Ms. Puhl responded, "[y]es, the United States agrees that Mr. Holmberg's heart condition qualifies as an exceptional circumstance such that his detention pending sentence would not be appropriate under Section 3145(c)."[37]

In the Eighth Circuit, the existence of exceptional reasons for a defendant's continued release is a question of law.[38] Parties to a case cannot bind a court regarding a question of law.[39] "However, stipulations by the parties regarding questions of fact are conclusive."[40] As such, while the conclusion that Mr. Holmberg's health conditions are exceptional circumstances is not binding on the Court, the parties' stipulation that Mr. Holmberg is dealing with multiple, serious, health complications answers a question of fact that is "conclusive" for this Court.

**IV.   Mr. Holmberg's infirmities constitute exceptional reasons for his continued release pending sentencing.**

Mr. Holmberg's medical conditions are "exceptional circumstances" for his continued release pending sentencing. In making this decision, this Court must look to the particulars of

---

[37]   *Id.*

[38]   *See United States v. Cantu*, 935 F.2d 950, 951 (8th Cir. 1991).

[39]   *See, e.g.*, *Gander v. Livoti*, 250 F.3d 606, 609 (8th Cir. 2001) ("The law is clear that stipulations of law are not binding on the court." (citations omitted)).

[40]   *Id.* (citation omitted).

this case.⁴¹ And when looking at those particulars, circumstances provide exceptional reasons when they are "clearly out of the ordinary, uncommon[,] or rare."⁴²

At the October 17, 2024, status conference, this Court identified five cases from the Eighth Circuit Court of Appeals, and one case from the District Court of North Dakota, that analyzed and addressed "exceptional reasons" arguments.⁴³ But none of these cases analyze whether medical concerns can satisfy the exceptional reasons standard.⁴⁴ Accordingly, their persuasive value is limited.

---

⁴¹ *See United States v. Rausch*, 746 F. Supp. 2d 1192, 1199 (D. Colo. 2010) ("A case by case evaluation of the circumstances is necessary to determine if 'exceptional reasons' exist." (citing *United States v. Wages*, 271 Fed. App'x 726, 727 (10th Cir. 2008) (quoting *United States v. DiSomma*, 951 F.2d 494, 497 (2d Cir. 1991)))).

⁴² *United States v. Brown*, 368 F.3d 992, 993 (8th Cir. 2004) (per curiam) (quoting *United States v. Koon*, 6 F.3d 561, 563 (9th Cir. 1993)).

⁴³ *See United States v. Krantz*, 530 Fed. App'x 609 (8th Cir. 2013) (per curiam); *United Stats v. Nickell*, 512 Fed. App'x 660 (8th Cir. 2013) (per curiam); *United States v. Mahoney*, 627 F.3d 705 (8th Cir. 2010) (per curiam); *United States v. Little*, 485 F.3d 1210 (8th Cir. 2007) (per curiam); *United States v. Larue*, 478 F.3d 924 (8th Cir. 2007) (per curiam); *Brown*, 368 F.3d 992; *United States v. Vallie*, No. C4-01-03, 2001 WL 627432 (D.N.D. Apr. 12, 2001).

⁴⁴ *See Krantz*, 530 Fed. App'x at 609 ("Krantz sought continued release pending sentencing, pointing to his three tours of duty with the military in Iraq and Afghanistan and his position as night nurse at his place of employment as circumstances that justified his continued release on bond pending sentencing."); *Nickell*, 512 Fed. App'x at 661 ("In support of Nickell's request that he be permitted to remain free on bond pending sentencing, his counsel pointed to Nickell's success in having remained free of methamphetamine use during the preceding two years, his full disclosure to and cooperation with law enforcement officers regarding his involvement in the crime charged, his regular attendance at drug treatment meetings, his success in passing every drug test, his full-time employment, and his care of his three young children."); *Mahoney*, 627 F.3d at 706 ("The sole exceptional reason given by the district court was that Mahoney had 'done remarkably well on release.'"); *Little*, 485 F.3d at 1210 (cooperation with investigation, compliance with pretrial release conditions, and timely appearance at court appearances given as "exceptional reasons" for release); *Larue*, 478 F.3d at 925 ("[T]he district court ordered that Larue continue to remain free on bond pending sentencing, listing as reasons the fact that Larue had complied with the terms of his pretrial release, that he had no criminal record, that he was paying support for his two young children,

Instead, an Eighth Circuit case more closely on point is *United States v. Spigner*.[45] In *Spigner*, the defendant was convicted for conspiracy to distribute a controlled substance.[46]

> At some point during the pendency of this action in district court, it became clear that Spigner was suffering from serious chronic health problems. During the April 14, 2004, change of plea hearing, Spigner informed the district court that he was on a daily regimen of the medications Lotensin and Norvasc to control his high blood pressure, and Renagel for his kidney problems. The court ordered a presentence investigation report (PSR) to be prepared, and allowed Spigner to remain on pretrial release until sentencing.[47]

The district court then delayed sentencing due to the defendant's ongoing health issues,[48] before ultimately sentencing the defendant to a bottom-of-the-guidelines sentence.[49]

The defendant ultimately appealed the sentencing, arguing "it was imposed by way of an unconstitutional mandatory Guidelines scheme."[50] The Eighth Circuit agreed, finding, "[i]n the wake of *Booker*, the district court's duty at sentencing is not merely to calculate the

---

that he was taking mental-health medication, that he had ongoing employment, and that the nature of his offenses might cause him to be subjected to violence while in jail or other detention facility."); *Brown*, 368 F.3d at 993 ("As best we can discern from the sentencing transcript, the exceptional circumstances found by the district court were that (1) Brown should remain in a treatment program for depression pending his assignment to a federal correctional institution, and (2) because his conviction was for child pornography, Brown might be subjected to violence if detained in a local jail while awaiting assignment to a federal correctional institution."); *Vallie*, 2001 WL 627432, at *4 (arguing need to care for sister suffering from cancer, care for mentally handicapped brother, and good conduct while on pretrial supervision, amounted to exceptional reasons for release).

[45] 416 F3d 708 (8th Cir. 2005).

[46] *Id.* at 709.

[47] *Id.*

[48] *Id.* at 709-10.

[49] *Id.* at 710.

[50] *Id.*

appropriate Guidelines range and then determine if a departure is appropriate."[51] Relevant to this case, the Eighth Circuit recognized that the district court found the defendant's medication concerns were exceptional reasons permitting release pending sentencing—

> The record shows that the district court was cognizant of and sensitive to the grave condition of Spigner's health. The court went to extraordinary efforts to ensure that Spigner's medical needs would be met by allowing him to remain free during his case, and granting him the privilege of self-reporting months after the imposition of his sentence. Indeed, due to his offense of conviction, Spigner *could not* remain free unless the district court found "exceptional reasons" why his detention would not be appropriate. 18 U.S.C. § 3145(c); *see also* 18 U.S.C. § 3143.[52]

*Spigner*'s recognition that medical concerns can amount to "exceptional reasons" is far from an outlier.[53] Indeed, the Department of Justice identified "ill health and infirmity from age" as precisely the types of "exceptional reasons" that would authorize continued release when the Department proposed the "exceptional reasons" exception to mandatory detention.[54]

Applied to this case, Mr. Holmberg's ill health and infirmity from age are "exceptional reasons" for this Court to allow him to remain on release pending sentencing. Filed under seal

---

[51] *Id.* at 711.

[52] *Id.* at 712-13 (emphasis in original).

[53] *See, e.g.*, *United States v. Chavez*, 710 F. Supp. 3d 227, 237-38 (S.D.N.Y. 2024) (defendant's "age and serious medical conditions" cited when finding exceptional reasons to continue release of defendant pending sentencing); *see also United State v. Lopez*, No 19CF116KMWJLC, 2020 WL 1678806, at *2 (S.D.N.Y. Apr. 6, 2020) (concluding that defendant with serious asthma, lung damage, and prior kidney failure "established exceptional reasons warranting his release pending sentencing" in light of COVID-19).

[54] *See Koon*, 6 F.3d at 564 n.8 ("In suggesting that a safety valve from the mandatory detention provisions of § 3145 be enacted, Assistant Attorney General Crawford gave ill health and infirmity from age as examples which might make detention unduly harsh." (citation omitted)).

simultaneously with this brief are a complete, voluminous, copy of the comprehensive medical history previously provided to the United States Probation and Pretrial Services Office at the time of Mr. Holmberg's presentence investigation interview. Also included under seal are updated medical records from Mr. Holmberg's recent post-presentencing interview appointments.

As established therein, Mr. Holmberg is an eighty-year-old man suffering from multiple, serious, medical conditions. Daily, he takes nine medications, all prescribed, although two are available for purchase without a prescription. Mr. Holmberg uses a bilevel positive airway pressure (BPAP) system nightly to deliver pressurized air into his airways due to sever sleep apnea. He continues to undergo rehabilitation for spinal stenosis surgery from last December. He receives injection treatments every three months, with the next treatment scheduled for December 9, 2024.

Most importantly, and serving as the exclusive basis for the Government's stipulation, is Mr. Holmberg's cardiac conditions. He suffers from atrial fibrillation. Of primary concerns, however, is his diagnosis of aortic valve stenosis, and potential heart failure. In September of this year, Mr. Holmberg underwent heart screening. Treatment for atrial fibrillation and aortic valve stenosis is ongoing. On October 21, 2024, Mr. Holmberg completed a follow-up appointment with his primary care provider based on constant chest pressure. Noting the importance of "rul[ing] out cardiac-related issues," the physician ordered "[a]n x-ray, blood work to check heart enzymes, and an EKG to assess heart rhythm." Mr. Holmberg awaits those results.

During his October 21, 2024, appointment, blood analysis revealed substantially abnormal brain natriuretic peptide results. As noted in the accompanying medical records,

results of less than 100 picograms/milliliter suggest the absence of heart failure. The records provide "[t]he higher the number, the more likely heart failure is present and the more severe it is." While Mr. Holmberg's result of 258.2 pg/mL may be caused by other conditions, with his diagnosed heart conditions, it is highly suggestive of heart failure. As noted, continued testing is ongoing to assess causation and treatment. Local facilities and the United States Marshal are not equipped to monitor and provide the required care.

Moreover, a foundational consideration of Mr. Holmberg's guilty plea was the Government's stipulation that his health constituted exceptional circumstances for his release. Mr. Holmberg initially sought to pursue pre-plea PSI so that issues with mandatory detention could be avoided. The Government was unwilling, instead representing that it would agree that Mr. Holmberg should remain released for "exceptional circumstances." This was necessary to allow Mr. Holmberg to not only treat his medical issues, but to allow him to work with counsel and experts to best present his case and the medical issues at the time of sentencing.[55] Reversal now would seriously impair Mr. Holmberg's ability to present his full sentencing case, depriving this Court of valuable sentencing information. Accordingly, based on the facts of this case, as well as the case law, and the legislative history, Mr. Holmberg respectfully submits that exceptional reasons support his continued release pending sentencing.

---

[55] *See* U.S.S.G. § 5K2.22(1) & (2) (permitting downward sentencing departures for "age" and "extraordinary physical impairment").

## CONCLUSION

In this case, the Government filed its request prior to knowing any details of Mr. Holmberg's alleged violations. The United States Pretrial Services has now disclosed those details. If the Government believes that viewing innocuous family photos, or reading news commentary should result in revocation of terms of release, the Government may bring such a formal motion, and Mr. Holmberg would respond to the merits of such a motion. But that is not the issue pending before the Court. As identified at the October 17, 2024, status conference, the current issue is whether Mr. Holmberg's current circumstances are "exceptional," to authorize his continued release. Respectfully, as outlined above, Mr. Holmberg's ongoing health concerns are out of the ordinary, uncommon, and rare. As such, they are "exceptional reasons" for his continued release under Section 3145.

Dated this 22nd day of October, 2024

**VOGEL LAW FIRM**

*/s/ Mark A. Friese*
BY: Mark A. Friese (#05646)
Drew J. Hushka (#08230)
218 NP Avenue
PO Box 1389
Fargo, ND 58107-1389
701.237.6983
Email: mfriese@vogellaw.com
dhushka@vogellaw.com
ATTORNEYS FOR DEFENDANT